# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2022

Lyle W. Cayce
Clerk

No. 22-40043

Feds for Medical Freedom; Local 918, American Federation of Government Employees; Highland Engineering, Incorporated; Raymond A. Beebe, Jr.; John Armbrust; et al.,

*Plaintiffs—Appellees*,

*versus*

Joseph R. Biden, Jr., *in his official capacity as President of the United States*; The United States of America; Pete Buttigieg, *in his official capacity as Secretary of Transportation*; Department of Transportation; Janet Yellen, *in her official capacity as Secretary of Treasury*; et al.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-356

Before Smith, Higginson, and Willett, *Circuit Judges*.

Per Curiam:

IT IS ORDERED that Appellants' opposed motion to stay the injunction pending appeal is CARRIED WITH THE CASE. This matter is expedited to the next available randomly designated regular oral argument

No. 22-40043

panel. The Clerk is directed to issue a schedule for expedited briefing. The merits panel, once identified, will be free, in its discretion, to rule immediately on the motion to stay or await oral argument.

No. 22-40043

Stephen A. Higginson, *Circuit Judge*, dissenting:

In September 2021, President Biden issued Executive Order No. 14043, which, subject to legally required exemptions, directs federal agencies to require their employees to be immunized against COVID-19, a disease that has killed nearly one million people in the United States and over five million worldwide. Though a dozen district courts have rejected requests to enjoin this order,[1] a single district judge in the Southern District of Texas, in a 20-page opinion,[2] issued a nationwide preliminary injunction against the President's exercise of authority over Article II employees. Because I would grant the Government's motion to stay that injunction pending appeal, I respectfully dissent from the majority's decision not to resolve this emergency matter.[3]

---

[1] *See Brnovich v. Biden*, No. CV-21-1568, 2022 WL 252396 (D. Ariz. Jan. 27, 2022); *Oklahoma v. Biden*, No. CIV-21-1136, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021); *Brass v. Biden*, No. 21-cv-2778, 2021 WL 6498143 (D. Colo. Dec. 23, 2021) (report and recommendation), *adopted*, 2022 WL 136903 (D. Colo. Jan. 14, 2022); *AFGE Local 501 v. Biden*, No. 21-23828-CIV, 2021 WL 6551602 (S.D. Fla. Dec. 22, 2021); *Donovan v. Vance*, No. 21-CV-5148, 2021 WL 5979250 (E.D. Wash. Dec. 17, 2021); *McCray v. Biden*, No. 21-2882, 2021 WL 5823801 (D.D.C. Dec. 7, 2021); *Navy Seal 1 v. Biden*, No. 21-cv2429, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021); *Rydie v. Biden*, No. 21-2696, 2021 WL 5416545 (D. Md. Nov. 19, 2021); *Altschuld v. Raimondo*, No. 21-cv-2779, 2021 WL 6113563 (D.D.C. Nov. 8, 2021); *Church v. Biden*, No. 21-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021); *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021); *Foley v. Biden*, No. 21-cv-1098, ECF No. 18 (N.D. Tex. Oct. 6, 2021).

[2] *Feds for Med. Freedom v. Biden*, No. 3:21-CV-356, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022).

[3] The district court issued its preliminary injunction on January 21. The Government moved to stay that order on January 28. The district court refused to rule on that motion. The Government, presumably with Solicitor General approval, then moved this court for a stay on February 4. Today, our court too refuses to rule. Thus, a presidential order affecting millions of federal employees has been enjoined nationwide, yet two separate federal courts have failed to rule on the Government's emergency request for a stay. The only court that can now provide timely relief is the Supreme Court.

No. 22-40043

## I.

When considering whether to grant a stay, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). In this case, all four factors favor granting a stay.

## II.

The Government has made a strong showing that it is likely to succeed on the merits, for at least three independent reasons.

## A.

As a threshold matter, the Government is likely to succeed in demonstrating on appeal that the district court lacks jurisdiction over this case. Congress requires covered federal employees to raise their workplace grievances through the administrative procedures set forth in the Civil Service Reform Act (CSRA). As the Supreme Court has explained, "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012); *see also Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991) (describing the CSRA as establishing "the comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government"); 5 U.S.C. §§ 7512, 7513(d), 7703(b)(1) (making certain adverse employment actions against federal employees reviewable by Merit Systems Protection Board and Federal

Circuit); *id.* §§ 1214(a)(3), 2302 (review scheme for less severe "prohibited personnel practice[s]"). For this reason alone, I would grant the stay.[4]

### B.

Even if we were to ultimately determine that the district court has jurisdiction to hear this case, the Government is likely to succeed in showing that the President has authority to promulgate this executive order pertaining to the federal executive workforce.

"Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). The President's executive power has long been understood to include "general administrative control of those executing the laws." *Id.* at 2197-98 (quoting *Myers v. United States*, 272 U.S. 52, 163-64 (1926)). Accordingly, the President "has the right to prescribe the qualifications of [Executive Branch] employees and to attach conditions to their employment." *Friedman v. Schwellenbach*, 159 F.2d 22, 24 (D.C. Cir. 1946); *see also Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 273 n.5 (1974) (noting "the President's responsibility for the efficient operation of the Executive Branch"); *Crandon v. United States*, 494 U.S. 152, 180 (1990) (Scalia, J., concurring in the judgment) (describing "the President's discretion-laden power" to regulate the Executive Branch under 5 U.S.C. § 7301); *Nat'l*

---

[4] Though the district court stated that the D.C. Circuit permits "pre-enforcement challenges to government-wide policies," the cases cited for this proposition all significantly pre-date *Elgin*. Allowing pre-enforcement challenges in district courts while requiring employees who experience actual employment actions to challenge those actions under the CSRA "would reintroduce the very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid." *Elgin*, 567 U.S. at 14.

No. 22-40043

*Treasury Emps. Union v. Bush*, 891 F.2d 99 (5th Cir. 1989) (upholding President Reagan's executive order authorizing random drug testing of certain federal employees). Thus, the President, as head of the federal executive workforce, has authority to establish the same immunization requirement that many private employers have reasonably imposed to ensure workplace safety and prevent workplace disruptions caused by COVID-19.

The district court rejected the above argument as "a bridge too far," given "the current state of the law as just recently expressed by the Supreme Court" in *NFIB v. OSHA*, 142 S. Ct. 661 (2022), and *Biden v. Missouri*, 142 S. Ct. 647 (2022). However, the district court misapprehended the single, animating principle that all Justices embraced in these decisions. As Justice Gorsuch explained in his *NFIB* concurrence, "The central question we face today is: Who decides?" 142 S. Ct at 667 (Gorsuch, J., concurring). In *NFIB*, the Court stayed an immunization requirement that unelected agency officials imposed on private employers that do not receive federal funding, explaining that "[a]dministrative agencies are creatures of statute" and that the Occupational Safety and Health Act does not "plainly authorize[] the Secretary's [immunization or testing] mandate." 142 S. Ct. at 665. Comparatively, in *Biden v. Missouri*, which involved an immunization requirement that unelected agency officials imposed on the staff of healthcare facilities receiving Medicare and Medicaid funding, the Court concluded that "the Secretary's rule falls within the authorities that Congress has conferred upon him." 142 S. Ct. at 652. Notably, even the dissenting Justices in that case acknowledged that "[v]accine mandates . . . fall squarely within a State's police power." *Id.* at 658 (Thomas, J., dissenting); *see also NFIB v. OSHA*, 142 S. Ct at 667 (Gorsuch, J., concurring) ("There is no question that state and local authorities possess considerable power to regulate public health."). Thus, in these two cases, the Court gave a consensus answer to Justice Gorsuch's question: it is elected, democratically-accountable officials,

including members of Congress[5] and state legislators, who have authority to decide—and answer for—the infection-fighting measures that they impose, including immunization requirements, such as mandatory smallpox vaccination, that our country has utilized for centuries. *See Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (upholding the authority of states to enforce compulsory vaccination laws). [6]

The President is not an unelected administrator. He is instead the head of a co-equal branch of government and the most singularly accountable elected official in the country. This federal workplace safety order displaces no state police powers and coerces no private sector employers. Instead, consistent with his Article II duty to "take Care that the Laws be faithfully executed," the President is performing his role as CEO of the federal workforce, [7] taking executive action in order to keep open essential

---

[5] *Cf.* 8 U.S.C. § 1182(a)(1)(A)(ii) (statutory requirement that any alien "who seeks admission as an immigrant" must "receive[] vaccination against vaccine-preventable diseases," including "mumps, measles, rubella, polio, tetanus and diphtheria toxoids, pertussis, influenza type B and hepatitis B").

[6] Indeed, executive immunization requirements predate the birth of this country, with George Washington famously requiring members of the Continental Army to be inoculated against smallpox. *See* Letter from George Washington to William Shippen, Jr. (Feb. 6, 1777), *in* 8 THE PAPERS OF GEORGE WASHINGTON, REVOLUTIONARY WAR SERIES, 6 JANUARY 1777 - 27 MARCH 1777, 264 (Frank E. Grizzard, Jr., ed.) (1998) ("Finding the small pox to be spreading much and fearing that no precaution can prevent it from running thro' the whole of our Army, I have determined that the troops shall be inoculated.").

[7] Notably, in a very recent survey of nearly 500 employers, the employee benefits consultancy Mercer "found 44% with a [vaccine] mandate currently in place and 6% planning to implement one, with another 9% still considering it." Beth Umland and Mary Kay O'Neill, *Worksite Vaccine Requirements in the Wake of the OSHA ETS* (Jan. 27, 2022), https://www.mercer.us/our-thinking/healthcare/worksite-vaccine-requirements-in-the-wake-of-the-osha-ets.html.

government buildings;[8] to maintain the provision of vital government services, such as the Transportation Security Administration; and to prevent unvaccinated federal employees from infecting co-workers or members of the public who, whether because of age or infirmity, might be highly vulnerable to hospitalization and death.

Federal employees that disagree with the content of Executive Order 14043 retain the right to claim an exemption, to leave the government's employment, to collectively bargain, and to challenge the order through the CSRA. And, of course, any American that disagrees with the content of the order has the right to vote the President out of office. Thus, consistent with *NFIB v. OSHA* and *Biden v. Missouri*, accountability for the federal executive employee immunization requirement is open, obvious, and vested in one elected, democratically-accountable official. These two cases do not cast doubt on, but rather determinatively confirm, the President's power to issue Executive Order No. 14043.

## C.

In addition to the issues discussed above, the government is also likely to succeed in showing that the plaintiffs have not met their burden for obtaining a preliminary injunction. A plaintiff seeking such an injunction must establish, among other requirements, "that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). However, even if the plaintiffs were to lose their jobs as a result of this order,[9] we have explained in a previous

---

[8] In contrast to many of the essential services and executive agencies that the President oversees, Article III institutions such as this court and the Supreme Court can close our buildings to the public, allowing us to rely on other, less effective infection-fighting measures, such as mandatory mask-wearing and testing.

[9] Notably, the district court did not identify a single plaintiff employee who, at the time the complaint was filed, 1) worked for an agency that had implemented the President's

No. 22-40043

case involving "discharge under the federal civil service laws" that "[i]t is practically universal jurisprudence in labor relations in this country that there is an adequate remedy for individual wrongful discharge after the fact of discharge": "reinstatement and back pay." *Garcia v. United States*, 680 F.2d 29, 31-32 (5th Cir. 1982). The CSRA makes this remedy available to the plaintiffs. *See* 5 U.S.C. § 7118(a)(7)(C). Accordingly, the plaintiffs cannot show that they are likely to suffer irreparable harm in the absence of preliminary relief.

\*     \*     \*

For these three independent reasons, the Government has made a strong showing that its appeal is likely to succeed on the merits.

III.

In addition to likelihood of success on the merits, the other factors for a stay are also met in this case. As stated above, a court considering whether to grant a stay must consider not only "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits" but also "(2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426.

Looking at the second factor, the district court's injunction places federal employees at a greater risk of hospitalization and death, not to mention being unable to work because of illness or the need to quarantine. As Jason Miller, the Deputy Director for Management at the Office of

---

immunization requirement, 2) had been denied an exemption, and 3) faced imminent discipline or discharge. *Cf. Brnovich*, 2022 WL 252396, at *6-8 (concluding that a U.S. Marshal's challenge to the federal employee immunization requirement was unripe).

Management and Budget, explained in a comprehensive declaration submitted to the district court, the Government's operational efficiency will be greatly impeded if this executive order cannot go into effect:

> In sum, each day that the vaccination requirement for Federal employees is delayed requires agencies that provide critical support for U.S. foreign policy, global financial systems, American infrastructure, and the pandemic response to devote additional time and resources to ensuring the safety of the Federal workforce above and beyond the substantial time and resources already devoted to these efforts—time and resources that would otherwise be spent doing critical mission function to the benefit of the American people.

Thus, the Government will be irreparably injured absent a stay.

Regarding the third factor, the issuance of a stay will not substantially injure the other parties in this proceeding. Even assuming that this executive order injures any plaintiff—as previously noted, the district court did not identify any particular plaintiff that faces imminent discipline or discharge—that injury can be remedied through reinstatement and backpay, for the reasons explained in *supra* Part II.C.

Finally, the public has an indisputable interest not only in the Government's operational efficiency but also in stemming the spread through the federal executive workforce, and beyond, of a highly contagious, deadly disease. Immunization requirements have proven extremely effective in the private sector. For example, the CEO of Tyson Foods has explained that even though less than half of the company's employees were vaccinated when Tyson announced its immunization requirement in early August, by late October "over 96% of our active team members [were] vaccinated—or

No. 22-40043

nearly 60,000 more than when we made the announcement."[10] Similarly, according to the CEO of United Airlines, "[p]rior to our vaccine requirement, tragically, more than one United employee on average *per week* was dying from COVID," but "we've now gone eight straight weeks with zero COVID-related deaths among our vaccinated employees."[11] Though the district court asserted, without evidence or citation, that "there is no reason to believe that the public interest cannot be served via less restrictive measures than the mandate" and that "[s]topping the spread of COVID-19 will not be achieved by overbroad policies like the federal-worker mandate," the public interest is not served by a single Article III district judge, lacking public health expertise and made unaccountable through life tenure, telling the President of the United States, in his capacity as CEO of the federal workforce, that he cannot take the same lifesaving workplace safety measures as these private sector CEOs.

## IV.

For the foregoing reasons, I would grant the stay.

However, even if I were to conclude that the motion should be denied with respect to these plaintiffs, I would grant the Government's motion insofar as the district court's nationwide preliminary injunction applies to any person or entity that is not either a named plaintiff or an individual possessing, at the time the complaint was filed, bona fide indicia of membership in one of the plaintiff organizations. As we recently explained,

---

[10] Tyson Foods to Require COVID-19 Vaccinations for its U.S. Workforce (August 3, 2021), https://www.tysonfoods.com/news/news-releases/2021/8/tyson-foods-require-covid-19-vaccinations-its-us-workforce; Over 96% of Tyson Foods' Active Workforce is Vaccinated (October 26, 2021), https://www.tysonfoods.com/news/news-releases/2021/10/over-96-tyson-foods-active-workforce-vaccinated.

[11] A Letter to United Employees from CEO Scott Kirby (Jan. 11, 2022), https://www.united.com/en/us/newsroom/announcements/scott-kirby-employee-note.

nationwide injunctions "can constitute 'rushed, high-stake, low-information decisions,' while more limited equitable relief can be beneficial." *Louisiana v. Becerra*, 20 F.4th 260, 264 (5th Cir. 2021) (quoting *Department of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of a stay)); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (observing that nationwide injunctions "are beginning to take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch").[12]

Cognizant of the separation of powers, as well as our judicial ignorance of the immense task of running the executive branch of government, for which the President, informed by public health experts, is solely accountable, I would not allow an unelected lower court to impose its Article III fiat on millions of Article II employees, above all when a dozen other lower courts have declined to enjoin the President's order.

---

[12] *See generally* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 421, 424 (2017) (arguing that nationwide injunctions lead to "forum shopping, worse decisionmaking, a risk of conflicting injunctions, and tension with other doctrines and practices of the federal courts" and that, in accordance with both equitable principles and the scope of the Article III judicial power, "federal courts should issue injunctions that control a federal defendant's conduct only with respect to the plaintiff").