

**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, DC 20530

Tel: (202) 305-8849

March 20, 2023

**Via CM/ECF**

Lyle W. Cayce, Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
600 South Maestri Place
New Orleans, LA 70130

   RE: *Feds for Medical Freedom v. Biden*, No. 22-40043 (en banc) (argued
     Sept. 13, 2022)

Dear Mr. Cayce:

I write under Rule 28(j) to call the Court's attention to the D.C. Circuit's
March 14 decision in *Federal Law Enforcement Officers Association v. Ahuja*, No.
21-5266, holding that the Civil Service Reform Act (CSRA) precluded district-
court jurisdiction over a challenge to a policy concerning the apportionment
of retirement benefits pursuant to a divorce decree.

Plaintiffs here have repeatedly relied on the D.C. Circuit's decision in *NTEU v.
Devine*, 733 F.2d 114 (D.C. Cir. 1984), and related cases, and rejected the govern-
ment's argument that intervening Supreme Court precedents cast doubt on those
cases. *E.g.*, En Banc Br. 22-29. But in its recent decision, the D.C. Circuit agreed
with the government that *Devine* is "call[ed] into question" by the Supreme
Court's intervening decisions in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200
(1994), and *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012). Slip op. 24. For
that proposition, the court cited two decisions addressing the vaccination re-
quirement at issue here. *Id.* (citing *Rydie v. Biden*, 2022 WL 1153249, at *6 (4th
Cir. Apr. 19, 2022); *Payne v. Biden*, 602 F. Supp. 3d 147, 159 (D.D.C. 2022), *appeal
pending*, No. 22-5154)).

The D.C. Circuit did not need to resolve whether *Devine* remains good law, be-
cause it found *Devine* distinguishable on the basis that it "involved a wholly pre-
enforcement rulemaking challenge." Slip op. 24. But *Thunder Basin* explicitly

rejected an argument that a pre-enforcement challenge was exempt from a statutory judicial-review process, explaining that although the statute was "facially silent with respect to pre-enforcement claims," its "structure … demonstrate[d] that Congress intended to preclude" such claims. 510 U.S. at 208. The same is true of the CSRA here.

Sincerely,

*/s/ Charles W. Scarborough*
Charles W. Scarborough

cc:    All counsel (via CM/ECF)

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2022      Decided March 14, 2023

No. 21-5266

FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION,
APPELLANT

v.

KIRAN AHUJA, IN HER OFFICIAL CAPACITY AS DIRECTOR OF
THE UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,
AND OFFICE OF PERSONNEL MANAGEMENT,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00735)

———

*Ryan E. Griffin* argued the cause and filed the briefs for appellant.

*Anna O. Mohan*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Charles W. Scarborough*, Attorney, and *Allison Kidd-Miller*, Deputy General Counsel, U.S. Office of Personnel Management. *Thomas G. Pulham*, Attorney, U.S. Department of Justice, entered an appearance.

2

Before: HENDERSON and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:    The Office of Personnel Management (OPM) administers retirement benefits for civilian employees of the U.S. government.  OPM typically pays retirement benefits to retirees themselves.  But when a retiree's benefits are subject to division pursuant to a divorce decree, OPM divides them between the retiree and his or her former spouse according to the terms of the decree.  The Federal Law Enforcement Officers Association (Association) brought this action against OPM in district court, claiming that OPM's method of apportioning one type of retirement benefit, the Annuity Supplement, violates the Administrative Procedure Act.  OPM moved to dismiss the complaint on jurisdictional grounds.

As a general matter, the Civil Service Reform Act and Federal Employees' Retirement System Act preclude district court review of challenges to federal employee retirement benefits determinations.    Those statutes provide for administrative review, with final agency decisions subject to appeal directly to the U.S. Court of Appeals for the Federal Circuit.    The district court acknowledged that federal employees' claims for retirement benefits are generally routed through that system of review, but held that the Association's claims fell within an exception allowing pre-enforcement challenges to agency rules to proceed in district court. Exercising jurisdiction, the district court dismissed one of the Association's counts for failure to state a legally cognizable claim and, after the administrative record was filed, granted summary judgment to OPM as to the others.

3

Our *de novo* review persuades us that the district court lacked jurisdiction to review the Association's claims. We therefore vacate the district court's orders and remand with instructions to dismiss for lack of jurisdiction.

## BACKGROUND

### A. Statutory Framework

The Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq.*, established a comprehensive system for administrative and judicial review of personnel actions involving federal employees. *United States v. Fausto*, 484 U.S. 439, 455 (1988); *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force* (*AFGE I*), 716 F.3d 633, 636 (D.C. Cir. 2013). The system involves two levels of review. In general, a claimant seeking to challenge a personnel action may first appeal to the Merit Systems Protection Board (MSPB or the Board). *See* 5 U.S.C. § 7701(a). A party that does not prevail there may seek judicial review of a final decision of the Board. *See id.* § 7703(b)(1). The CSRA provides for appeal of final MSPB decisions directly to the Federal Circuit. *See id.*; 28 U.S.C. § 1295(a)(9). In reviewing MSPB decisions, the Federal Circuit "shall review the record and hold unlawful and set aside any agency action, findings, or conclusions" that are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(a)(1), (c). "The CSRA provides 'the exclusive avenue for suit' to a plaintiff whose claims fall within its scope." *AFGE I*, 716 F.3d at 636 (quoting *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009)); *accord Filebark v. U.S. Dep't of Transp.*, 555 F.3d

4

1009, 1013 (D.C. Cir. 2009); *Fornaro v. James*, 416 F.3d 63, 66-67 (D.C. Cir. 2005).

The Federal Employees' Retirement System (FERS) Act of 1986, 5 U.S.C. § 8401 *et seq.*, establishes a system of retirement benefits for federal employees and their survivors. With limited exceptions, it tasks OPM with administering that system and "adjudicat[ing] all claims under [the FERS Act] administered by [OPM]." *Id.* § 8461(b), (c). As relevant here, the FERS Act channels claims regarding OPM benefits determinations through the CSRA's two-tier system of review, beginning with the MSPB. *See id.* § 8461(e)(1). The FERS Act provides that, subject to certain exceptions, "an administrative action or order affecting the rights or interests of an individual or of the United States under the provisions of [the FERS Act] administered by [OPM] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board." *Id.*; *see Rodriguez v. United States*, 852 F.3d 67, 83 (1st Cir. 2017); *cf. Fornaro*, 416 F.3d at 64-67 (describing the parallel remedial regime under the Civil Service Retirement System Act).

The FERS Act entitles eligible federal employees to certain defined retirement benefits, including a Basic Annuity and Social Security payments. *See* 5 U.S.C. §§ 8403, 8412, 8415; 42 U.S.C. §§ 402, 414, 415. Federal employees who are legally required to retire at an age before they are eligible for Social Security—such as law enforcement officers, 5 U.S.C. § 8425(b)—are also entitled to an Annuity Supplement to their Basic Annuity until they age into Social Security benefits, *see id.* § 8421.

The Basic Annuity and Annuity Supplement are typically paid to the retirees themselves. However, when a retiree's benefits are subject to division pursuant to a divorce decree, the

5

FERS Act establishes rules for apportioning those benefit payments between the retiree and his or her former spouse. *See id.* §§ 8421(c), 8467. As codified, the FERS directs OPM, as a general matter, to pay the retiree's former spouse "if and to the extent expressly provided for in the terms of" the divorce decree. *Id.* § 8467(a). As for the Annuity Supplement specifically, section 8421(c) provides that the Annuity Supplement "shall, for purposes of section 8467, be treated in the same way as" the Basic Annuity. *Id.* § 8421(c).

## B. OPM's Challenged Guidance

The Federal Law Enforcement Officers Association challenges OPM's practice of apportioning the Annuity Supplement pursuant to its interpretation of sections 8421(c) and 8467 of the FERS Act as codified. OPM set forth its interpretation in two internal guidance documents. First, in late 2014, OPM issued an internal Retirement Policy Memorandum interpreting sections 8421(c) and 8467 to require OPM to divide the Annuity Supplement whenever, and to the same extent, a divorce decree requires division of the Basic Annuity. Second, on June 28, 2016, OPM issued an internal "Retirement and Insurance Letter" (2016 Guidance) restating that interpretation with an added caveat: "[I]f the court order expressly excludes the FERS annuity supplement from the computation of the former spouse's share," then OPM is not required to divide the Annuity Supplement in the same way as the Basic Annuity. J.A. 65 (2016 Guidance). The 2016 Guidance also directed OPM specialists to manually update the benefits calculation for affected retirees to reduce future payments to correct for past overpayments to retirees, and to calculate and pay to former spouses the accrued benefits to which they were entitled but that were paid to the retiree.

6

## C. Procedural History

In March 2019, nearly three years after OPM issued its 2016 Guidance, the Association filed this Administrative Procedure Act (APA) suit in district court. It challenges OPM's apportionment policy on three grounds. First, the Association claims that OPM's policy of dividing the Annuity Supplement to the same extent as the Basic Annuity is arbitrary, capricious, and contrary to law because the FERS Act permits division of retirement benefits only "to the extent expressly provided for in the terms of" a divorce decree or other court order. 5 U.S.C. § 8467(a); *see* J.A. 14-15 (Complaint). According to the Association, the FERS Act thus prohibits OPM from dividing a retiree's Annuity Supplement unless a divorce decree expressly references and calls for division of the Annuity Supplement itself. Second, the Association challenges the 2016 Guidance as procedurally invalid because it was not promulgated by notice and comment rulemaking. And third, it claims that OPM's application of its new apportionment policy to payments already disbursed exceeds its statutory authority. As relief, the Association asks the court to "[d]eclare invalid OPM's practice of apportioning the FERS Annuity Supplement absent a court order expressly directing such apportionment" and to "[p]ermanently enjoin [OPM] from continuing to do so." J.A. 16 (Complaint).

The district court granted in part and denied in part OPM's motion to dismiss the complaint. Addressing OPM's assertion that it lacked jurisdiction, the district court acknowledged that the CSRA and FERS Act generally channel claims related to federal employees' retirement benefits exclusively through the MSPB, subject to direct review in the Federal Circuit. But the court applied an "exception" articulated by this court in a footnote in *NTEU v. Devine*, 733 F.2d 114 (D.C. Cir. 1984), that allows for pre-enforcement review of rules. *Fed. L. Enf't*

7

*Officers Ass'n v. Rigas*, No. 19-CV-735 (CKK), 2020 WL 4903843, at \*4, \*8 (D.D.C. Aug. 20, 2020) (citing *Devine*, 733 F.2d at 117 n.8). The court held that, because OPM's 2016 Guidance is an interpretive rule rather than a statement of policy, the Association could challenge it in district court under *Devine*.

Having determined that OPM's 2016 Guidance qualifies as an interpretive rule, however, the court dismissed the Association's notice and comment rulemaking claim on the ground that the APA does not require agencies to promulgate interpretive rules by notice and comment. After OPM filed the administrative record, the parties cross-moved for summary judgment. The district court denied the Association's motion and granted OPM's cross-motion on the Association's two remaining claims. It sustained OPM's Guidance as "consistent with the unambiguous statutory directive that annuity supplements be 'treated in the same way' as basic annuity." *Fed. L. Enf't Officers Ass'n v. Ahuja*, No. 19-CV-735 (CKK), 2021 WL 4438907, at \*4 (D.D.C. Sept. 28, 2021). The statutory requirement to treat the Supplement "in the same way" as the Basic Annuity, the district court held, unambiguously requires OPM to apply a divorce decree provision dividing the Basic Annuity to the Supplement as well. *Id.* at \*4-6. The court was unpersuaded by the Association's argument that, because the statute requires any division of the Basic Annuity to be "expressly provided for" in the decree, the same-treatment requirement demands separate, express provision for any division of the Supplement. *Id.* The district court also rejected the Association's claim that OPM exceeded its authority in requiring "retroactive" recovery and re-direction of payments that the statute required to be divided but had been erroneously disbursed in full to the retiree. *Id.* at \*6-7. Rather, OPM's remedial actions to recoup overpayments from retirees' future benefit amounts and to pay former spouses

8

their due were reasonable and lawful "corrective measures to correctly implement the statute." *Id.* at *7.

## DISCUSSION

On appeal, the Association argues that the district court erred as a matter of law in ruling against it on the merits of its claims. OPM counters that the district court lacked jurisdiction over the Association's claims, and thus should have dismissed the entire case at the outset. We review *de novo* the district court's exercise of jurisdiction, and its rulings on the motions to dismiss and for summary judgment. *See True the Vote, Inc. v. Internal Revenue Serv.*, 831 F.3d 551, 555 (D.C. Cir. 2016); *Genus Med. Techs. LLC v. U.S. Food & Drug Admin.*, 994 F.3d 631, 636 (D.C. Cir. 2021).

We conclude that the district court lacked jurisdiction because the CSRA and FERS Act preclude district court review of the Association's claims. Under those Acts, judicial review of claims challenging OPM's method of apportioning retirement benefits is available only in the Federal Circuit following administrative exhaustion. We therefore vacate the district court's orders and remand with instructions to dismiss for lack of jurisdiction.

## A.

The CSRA's hybrid administrative and judicial regime is the exclusive process for challenges to OPM's calculation of FERS retirement benefits, thereby displacing district court review. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). "Litigants generally may seek review of agency action in district court under any applicable jurisdictional grant," *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018), "but Congress may preclude

9

district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review" as an exclusive system of review, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* (*AFGE II*), 929 F.3d 748, 754 (D.C. Cir. 2019). "If a special statutory review scheme exists, . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *City of Rochester v. Bond*, 603 F.3d 927, 931 (D.C. Cir. 1979)).

To determine whether a statutory scheme of administrative and judicial review is the exclusive means of review, we follow the two-step analysis described in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Under that analysis, a statutory remedial scheme displaces district court review where: (1) Congress's intent to allocate initial review exclusively to an administrative body is "fairly discernible in the statutory scheme" based on the statute's text, structure, and purpose, *id.* at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)); and (2) the claims at issue are "of the type Congress intended to be reviewed within th[at] statutory structure," *id.* at 212; *accord Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012); *AFGE II*, 929 F.3d at 754; *Jarkesy*, 803 F.3d at 15. Congress need not expressly deem a statutory regime to be exclusive for it to satisfy step one. *See Elgin*, 567 U.S. at 10-12. Rather, Congress's intent to displace district court jurisdiction may be "implied"—for instance, by the comprehensive nature of the statutory system of review and Congress's purpose in enacting it. *Id.* at 12; *see id.* at 9-14.

Here, both steps of the inquiry support the conclusion that the CSRA bars district court review of the Association's challenge.

10

### 1.

At step one, the Association does not seriously dispute that Congress intended to route challenges to FERS retirement benefits determinations exclusively through the CSRA's remedial regime. *See* Reply Br. 12. Nor could it. We have already held that the CSRA provides the exclusive avenue for review of claims challenging "how OPM calculates civil service [retirement] benefits for particular classes of beneficiaries." *Fornaro*, 416 F.3d at 68; *see id.* at 66-69.

In *Fornaro v. James*, a group of eight plaintiffs who sought to represent a class of retired, disabled federal law enforcement officers and firefighters sued OPM for an upward adjustment to their disability benefits under the Civil Service Retirement System—the legacy system that preceded the FERS. *See id.* at 64. The plaintiffs argued that their action could proceed in district court under the APA's waiver of sovereign immunity. *Id.* We held the APA's waiver inapplicable and affirmed the district court's dismissal for lack of jurisdiction "because Congress ha[d] prescribed a route other than suit under the APA for vindicating claims for civil service benefits"—the CSRA's system of review. *Id.* As we explained, "[a] series of opinions from the Supreme Court and this court make clear that [the CSRA's remedial regime is] exclusive, and may not be supplemented by the recognition of additional rights to judicial review having their sources outside the CSRA." *Id.* at 66; *see id.* at 66-69 (citing *Fausto*, 484 U.S. at 444-49; *Lindahl v. OPM*, 470 U.S. 768, 798-99 (1985); *Carducci v. Regan*, 714 F.2d 171, 174-75 (D.C. Cir. 1983); *Graham v. Ashcroft*, 358 F.3d 931, 933-36 (D.C. Cir. 2004)); *see also Elgin*, 567 U.S. at 10-15, 23; *AFGE II*, 929 F.3d at 754-61; *AFGE I*, 716 F.3d at 636-40; *Grosdidier*, 560 F.3d at 496-98; *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448-49 (D.C. Cir. 2009).

11

We grounded our holding in *Fornaro* in the terms, structure, and purpose of the CSRA and Civil Service Retirement System, as interpreted by those precedents. Like the FERS, the Civil Service Retirement System channels appeals of OPM's retirement benefits determinations into the CSRA's two-tier system of review:  After OPM finally adjudicates a retirement benefits claim, the losing party may appeal to the MSPB, subject to appeal directly to the Federal Circuit.  *See Fornaro*, 416 F.3d at 66 (citing 5 U.S.C. §§ 7703(b)(1),  8347(b),  (d)(1);  28 U.S.C.  § 1295(a)(9)). Congress designed this system to "replace the haphazard arrangements for administrative and judicial review of personnel action" that existed prior to the CSRA's enactment. *Id.* at 67 (quoting *Fausto*, 484 U.S. at 444).  Pre-CSRA, claimants often appealed adverse agency decisions to district courts across the country through a wide variety of forms of action, including suits for mandamus, injunction, and declaratory judgment.  *Id.*  Congress enacted the detailed CSRA review system to ensure greater uniformity of process and consistency of interpretation.  *See id.* at 67, 69; *see also Elgin*, 567 U.S. at 13-14; *Fausto*, 484 U.S. at 444-45, 451.  By requiring initial resort to the MSPB, Congress fostered a consistent executive branch approach.  It also sought to increase efficiency by directing review from the MSPB to the court of appeals, eliminating what Congress viewed as an "unnecessary layer" of review in district court.  *Fornaro*, 416 F.3d at 67 (quoting *Fausto*, 484 U.S. at 449).  And, by centralizing review of final MSPB decisions in the Federal Circuit, Congress expected increased uniformity of judicial decisions as well.  *See id.* at 69; *see also Fausto*, 484 U.S. at 449; *Lindahl*, 470 U.S. at 798.

Just as the CSRA's reticulated remedial scheme and purpose foreclosed district court review of the *Fornaro* plaintiffs' claims, the FERS Act bars district court review of

12

challenges to OPM's calculation of retirement benefits. The statutory system of review for FERS retirement benefits determinations is materially identical to the system for Civil Service Retirement System benefits determinations considered in *Fornaro*. *Compare* 5 U.S.C. § 8347(b), *and id.* § 8347(d)(1), *with id.* § 8461(c), *and id.* § 8461(e)(1). The FERS Act channels appeals of OPM's retirement benefits determinations through the CSRA's system of review: After OPM adjudicates the claim, claimants may appeal adverse decisions to the MSPB, *id.* § 8461(e)(1); *see id.* § 7701(a), subject to direct judicial review in the Federal Circuit, *id.* § 7703(b)(1); 28 U.S.C. § 1295(a)(9). And the Association offers no reason why the step one inquiry under *Thunder Basin* should differ as between the FERS and the Civil Service Retirement System. *See* Reply Br. 3-4, 12. We can thus fairly discern—for the same reasons articulated in *Fornaro*, 416 F.3d at 66-69—that Congress intended to channel disputes over OPM calculation of FERS retirement benefits for particular classes of beneficiaries exclusively through the CSRA's remedial regime.

**2.**

The Association's claims are also "of the type" Congress intended for CSRA review. *Thunder Basin*, 510 U.S. at 212. Per *Fornaro*, "actions challenging how OPM calculates civil service [retirement] benefits for particular classes of beneficiaries" fall within the CSRA's exclusive scope. 416 F.3d at 68. We presume, however, that Congress did not intend to preclude district court review of a litigant's claims "when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *AFGE II*, 929 F.3d at 755 (quoting *Arch Coal*, 888 F.3d at 500); *see Elgin*, 567 U.S. at 15; *Free Enter. Fund*

13

*v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010). Those considerations are not "three distinct inputs into a strict mathematical formula." *Jarkesy*, 803 F.3d at 17. Rather, they act as "general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Id*. Because our analysis of these considerations differs in some respects as between the Association's claims challenging the substance of OPM's 2016 Guidance as opposed to the procedures by which OPM issued that Guidance, we examine each set of claims in turn.

**a.**

Beginning with the Association's substantive claims—*i.e.*, that OPM's apportionment policy is arbitrary, capricious, and contrary to law and that OPM exceeded its statutory authority in applying that policy "retroactively," J.A. 14-16 (Complaint)—all three considerations plainly support preclusion of district court review.

For starters, the Association does not dispute that the CSRA provides individual claimants with an opportunity for meaningful judicial review of those substantive claims: appeal of final MSPB decisions directly to the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9); Reply Br. 3-4, 12-13. Indeed, individual claimants have already used the CSRA's administrative process to challenge OPM's 2016 Guidance as applied to their own Annuity Supplement payments. The MSPB has issued four initial decisions on those cases. *See Young v. OPM*, No. PH-831M-19-0459-I-1, 2020 WL 698466 (MSPB Initial Decision Feb. 7, 2020); *Kuebbeler v. OPM*, No. AT-0843-19-0356-I-1, 2019 WL 4252309 (MSPB Initial Decision Sept. 4, 2019); *Moulton v. OPM*, No. DE-0841-18-0053-I-1, 2018 WL 1919715 (MSPB Initial Decision Apr. 16, 2018); *Simon v. OPM*, No. CH-0845-18-

14

0088-I-1, 2018 WL 1036536 (MSPB Initial Decision Feb. 22, 2018). And OPM recounted that, as of the date it filed its brief, three petitions for review of initial decisions were pending before the full Board. Gov't Br. 26. Once the Board rules on those petitions, judicial review is available in the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9). A ruling that the CSRA precludes district court review would not "foreclose all meaningful judicial review" of the types of substantive claims the Association advanced in district court. *Elgin*, 567 U.S. at 15 (quoting *Free Enter. Fund*, 561 U.S. at 489). And the Association does not argue that meaningful judicial review is nonetheless unavailable because the Association's representative character might prevent it from advancing substantive claims through the CSRA's remedial regime. *See* Reply Br. 12-13; *cf. AFGE I*, 716 F.3d at 638-39. We therefore decline to consider any such argument.

Second, the Association's substantive claims are not wholly collateral to the CSRA's system of review. A challenge is not "wholly collateral" to a statutory scheme if the plaintiff "aim[s] to obtain the same relief [it] could seek" through the statutory regime, especially where the claims are "inextricably intertwined with the conduct of the" statutory scheme's proceedings. *Jarkesy*, 803 F.3d at 23; *see Elgin*, 567 U.S. at 22; *AFGE II*, 929 F.3d at 759-60. "This consideration is 'related' to whether 'meaningful judicial review' is available, and the two considerations are sometimes analyzed together." *AFGE II*, 929 F.3d at 759 (quoting *Jarkesy*, 803 F.3d at 23). Here, the gravamen of the Association's claims is that OPM's policy memo and letter unlawfully direct apportionment of an individual retiree's Annuity Supplement to a former spouse "absent a court order expressly directing such apportionment." J.A. 16 (Complaint). As relief, the Association seeks a declaratory judgment to that effect and a permanent injunction barring OPM from continuing to apportion the Annuity

15

Supplement in that manner.  *Id.*  That challenge goes directly
to "how OPM calculates civil service benefits for [a] particular
class[] of beneficiaries," *Fornaro*, 416 F.3d at 68, and seeks to
"obtain the same relief [individual claimants] could seek in the
agency proceeding," *AFGE II*, 929 F.3d at 760 (quoting
*Jarkesy*, 803 F.3d at 23); *see also Elgin*, 567 U.S. at 22.  It thus
falls squarely within the scope of the CSRA's exclusive
remedial regime.  *See Fornaro*, 416 F.3d at 68; *see AFGE II*,
929 F.3d at 759-60.

Finally, the Association's substantive claims are not
"outside the MSPB's expertise." *Elgin*, 567 U.S. at 22.  The
MSPB "routinely considers" statutory challenges to OPM's
FERS authority and benefits determinations and "regularly
construes" the provisions of the FERS Act underlying the
Association's substantive claims.  *Id.* at 23; *see, e.g.*,
*Kuebbeler*, 2019 WL 4252309; *Moulton*, 2018 WL 1919715.
There is no dispute that the MSPB's expertise can therefore be
"brought to bear" on the Association's substantive claims.
*Elgin*, 567 U.S. at 23 (quoting *Thunder Basin*, 510 U.S. at 214-
15).

The    Association    advances    two    principal
counterarguments.  First, it contends that its claims do not fall
within the CSRA's scope because it brings a systemic
challenge to OPM policy, not a challenge to an individual
benefits determination.  *See* Reply Br. 6, 12-13.  But in
*Fornaro* we considered the argument that "[t]he CSRA
regime's exclusivity for individual benefits determinations
does not preclude . . . a collateral, systemwide challenge to
OPM policy."  416 F.3d at 67.  As we explained in rejecting
that argument, "[a]llowing an alternative route to relief in the
district court because plaintiffs frame their suit as a systemwide
challenge to OPM policy would substitute an entirely different
remedial regime for the one Congress intended to be

16

exclusive." *Id.* at 68. "Such an approach would reintroduce 'the haphazard arrangements for administrative and judicial review of personnel action'" that the CSRA was designed to address. *Id.* (quoting *Fausto*, 484 U.S. at 444). It would also "impermissibly create a right of access to the courts more immediate and direct than the [CSRA] provides, thus fracturing the unifying authority . . . of the MSPB, and undermining the consistency of interpretation by the Federal Circuit envisioned by the Act." *Id.* at 69 (internal citations and quotation marks omitted); *see also Elgin*, 567 U.S. at 11-15 (rejecting on similar grounds petitioners' request to "carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes"); *AFGE I*, 716 F.3d at 639. In keeping with that precedent, we decline to sanction the Association's attempted end run around the CSRA here.

Second, the Association argues that CSRA exclusivity applies only to claims brought under the FERS, *i.e.*, Chapter 84 of Title 5 of the U.S. Code, as opposed to claims brought under the APA. *See* Reply Br. 12-13. That argument, too, is foreclosed. We have repeatedly admonished in prior CSRA decisions that litigants "may not circumvent the [CSRA's] requirements and limitations by resorting to the catchall APA." *Grosdidier*, 560 F.3d at 497; *see also AFGE I*, 716 F.3d at 639 (noting this rule "applies to a 'systemwide challenge' to an agency policy interpreting a statute just as it does to the implementation of such a policy in a particular case" (quoting *Nyunt*, 589 F.3d at 449)); *Fornaro*, 416 F.3d at 67-69. The Association cannot bypass the CSRA's remedial regime by relying on the APA.

In light of the foregoing, we conclude that the Association's challenge to OPM's apportionment policy as arbitrary, capricious, and contrary to law and its claim that OPM exceeded its statutory authority in applying that policy to

17

recoup and redirect payments made in error are both "of the type Congress intended to be reviewed within" the CSRA's system of review. *Thunder Basin*, 510 U.S. at 212.

**b.**

The Association's notice and comment rulemaking claim presents a closer call. On balance, however, the three considerations at step two of the *Thunder Basin* inquiry also defeat the district court's authority to hear that claim.

To begin with, meaningful judicial review is available through the CSRA's scheme. The Supreme Court and this court have consistently held that an opportunity for meaningful judicial review remains available within a special statutory scheme so long as the claims at issue "can eventually reach 'an Article III court fully competent to adjudicate' them." *Jarkesy*, 803 F.3d at 19 (quoting *Elgin*, 567 U.S. at 17); *accord AFGE II*, 929 F.3d at 758. In *Elgin*, for instance, the Supreme Court held that the CSRA provides an avenue for meaningful judicial review of challenges to the constitutionality of federal statutes because, although the MSPB may not have the authority to pass on a statute's validity, the Federal Circuit has full authority to do so. 567 U.S. at 16-21. The petitioners in *Elgin* sued in district court to challenge their discharge from federal employment for failure to register for the military draft. *Id.* at 6-8. They challenged on Equal Protection and Bill of Attainder Clause grounds the statutes that required already-hired male federal employees to register. *Id.* The Court concluded that, even assuming "the MSPB lacks authority to declare a federal statute unconstitutional," meaningful judicial review remained available because "the Federal Circuit has authority to consider and decide petitioners' constitutional claims," and, "[t]o the extent [they] require factual development, the CSRA equips the

18

MSPB with tools to create the necessary record." *Id.* at 16, 21; *see id.* at 17-21.

Similarly, in *AFGE II*, we held that the CSRA's system of review for federal employees' labor-relations claims assured an opportunity for meaningful judicial review of constitutional and statutory challenges to executive orders. 929 F.3d at 755-59. The CSRA provides for administrative review by the Federal Labor Relations Authority (FLRA), subject to judicial review in the courts of appeals. *See id.* at 752, 758. Drawing on *Elgin*, we explained that, "even if the FLRA could not address the [plaintiff's] claims, circuit courts could do so on appeal from the FLRA." *AFGE II*, 929 F.3d at 758.

So too here. The CSRA authorizes the Federal Circuit to review notice and comment claims like the Association's: It requires that court, in reviewing final MSPB decisions, to "review the record and hold unlawful and set aside any agency action, findings, or conclusions" that are "obtained without procedures required by law, rule, or regulation having been followed." 5 U.S.C. § 7703(c)(2). And the Association identifies no reason why the opportunity provided by the CSRA for direct review in a federal court of appeals that was held sufficient in *Elgin* and *AFGE II* would fall short of ensuring "meaningful judicial review" of the notice and comment claims at issue here. *See* Reply Br. 9; *Elgin*, 567 U.S. at 16-21; *AFGE II*, 929 F.3d at 758-59.

Second, the Association's notice and comment claim, as pleaded, is not wholly collateral to the CSRA's system of review. Recall that where a challenge is merely the "vehicle" by which a plaintiff "aim[s] to obtain the same relief [it] could seek" through the statutory regime, the challenge is not "wholly collateral" to that scheme. *Jarkesy*, 803 F.3d at 23; *see Elgin*, 567 U.S. at 22. Importantly, the Supreme Court has made clear

19

this inquiry does not turn on whether a specific claim "lends itself to a 'substantive' rather than a 'procedural' label." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984). Instead, we examine whether the action "at bottom" seeks a substantive determination that falls within the statutory regime's exclusive scope. *Id.* at 614.

*Heckler v. Ringer* is instructive. There, four individual Medicare claimants challenged on both substantive and procedural grounds the lawfulness of a policy instituted by the Secretary of Health and Human Services regarding Medicare Part A reimbursements. 466 U.S. at 604-09. As relevant here, the plaintiffs challenged the Secretary's "failure to comply with the rulemaking requirements of the APA" in issuing the challenged instructions and rule—including the requirement to publish a notice of proposed rulemaking. *Id.* at 614; *see id.* at 610 & n.7; J.A. 20-22, *Heckler*, 466 U.S. 602 (No. 82-1772). The Court held that section 405(g) of the Medicare Act precluded district court review of the plaintiffs' claims, including their procedural challenges. *Heckler*, 466 U.S. at 613-17, 620-21, 627. Although some of the plaintiffs' claims were facially procedural, the Court reasoned,"[t]he relief that [the plaintiffs sought] to redress their supposed 'procedural' objections [was] the invalidation of the Secretary's current policy and a 'substantive' declaration from her that the expenses of [a specific type of] surgery are reimbursable under the Medicare Act." *Id.* at 614. As a result, "it ma[de] no sense to construe the claims of [the plaintiffs] as anything more than, at bottom, a claim that they should be paid for their . . . surgery"—*i.e.*, precisely the type of claim that Congress intended to channel through the remedial regime established under the Medicare Act. *Id.*; *see also Elgin*, 567 U.S. at 22 (referencing *Heckler* on this point); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000) (same).

20

Like the plaintiffs in *Heckler*, the Association casts its objection as procedural but seeks a substantive declaration and injunction requiring the agency to change its payment practices. The Association is not seeking notice and an opportunity to comment, but asking the court to "[d]eclare invalid OPM's practice of apportioning the FERS Annuity Supplement absent a court order expressly directing such apportionment" and to "permanently enjoin [OPM] from continuing to do so." J.A. 16 (Complaint). That requested relief goes directly to the substance of OPM's calculation of individual retirees' benefits pursuant to divorce decrees, and is "precisely the kind[] of relief that the CSRA empowers the MSPB and the Federal Circuit to provide." *Elgin*, 567 U.S. at 22. Thus, once we peel back the "'procedural' label," per *Heckler*, the Association's claim is, "at bottom," a claim that individual retirees are entitled to a different division of their Annuity Supplements. 466 U.S. at 614. That challenge is not wholly collateral to the CSRA's remedial regime; it falls within it.

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991)—a post-*Heckler* case cited by the Association—does not support a contrary conclusion. *McNary* involved a procedural due process challenge to the Immigration and Naturalization Service's administration of the special agricultural workers (SAW) amnesty program established under the Immigration Reform and Control Act of 1986 (IRCA). *Id.* at 481-88. Under the SAW amnesty program, non-U.S. citizen farmworkers residing unlawfully in the United States who had performed at least 90 days of qualifying agricultural work during the 12-month period before May 1, 1986, and who met certain other criteria, could apply for SAW status. *Id.* at 483. That status authorized temporary residence and provided a pathway to lawful permanent residence. *Id.* The plaintiffs, two organizations and a group of unsuccessful

21

SAW applicants, alleged that the Immigration and Naturalization Service (INS) had violated the procedural due process rights of the SAW applicants as well as the requirements of IRCA by, among other things, conducting interviews in an arbitrary manner, failing to apprise SAW applicants of or give them an opportunity to challenge evidence on which their SAW status denials were predicated, and failing to provide competent interpreters. *See id.* at 487-88.

The question before the Court was a narrow one: whether a provision of IRCA, which barred judicial review of individual SAW status determinations except in the context of deportation proceedings, foreclosed district court review of the plaintiffs' procedural due process claims. *Id.* at 491 (citing 8 U.S.C. § 1160(e)). The Court held that it did not. *See id.* at 492-95. As the Court explained, the text of the judicial review bar "referr[ed] only to review 'of a determination respecting an application' for SAW status." *Id.* at 494 (emphases omitted) (quoting 8 U.S.C. § 1160(e)(1)). Because the plaintiffs' claims challenged only the "procedures used by INS" and would not "have [had] the practical effect of also deciding their claims for benefits on the merits," the statutory bar to judicial review did not apply. *Id.* at 494-95.

Critically, in reaching that conclusion, the *McNary* Court distinguished *Heckler* based on the essentially substantive relief the *Heckler* plaintiffs requested. *See id.* at 495-96. The Court explained that, "[u]nlike the situation in *Heckler*, the individual [plaintiffs] in this action do not seek a substantive declaration that they are entitled to SAW status. . . . Rather, if allowed to prevail in this action, [the individual plaintiffs] would only be entitled to have their case files reopened and their applications reconsidered in light of the newly prescribed . . . procedures." *Id.* at 495.

22

Here, the relief requested by the Association places this case on the *Heckler* side of the line. Unlike the *McNary* plaintiffs, the Association is not seeking the procedural opportunities that notice and comment would provide. To the contrary, as discussed above, the Association requests a change to OPM's substantive method for calculating individual retirees' Annuity Supplement payments. *See* J.A. 16 (Complaint) (requesting that the court "[p]ermanently enjoin" OPM from "apportioning the FERS Annuity Supplement absent a court order expressly directing such apportionment"). The Association's procedural claim, as pleaded, is thus more akin to the claims at issue in *Heckler*—which included that the challenged Medicare policy was invalid for want of notice and comment—than those deemed wholly collateral in *McNary*. *See Heckler*, 466 U.S. at 612-14; *McNary*, 498 U.S. at 495.

Finally, even assuming without deciding that the Association's notice and comment claim raises questions that are "outside the MSPB's expertise," *Elgin*, 567 U.S. at 22, that consideration does not outweigh the other two factors that counsel in favor of precluding district court review.

We therefore conclude that the Association's notice and comment claim, as pleaded, is "of the type" Congress intended to channel through the CSRA's exclusive remedial regime. *Thunder Basin*, 510 U.S. at 212. We do not foreclose the possibility of procedural challenges to OPM rulemaking related to FERS retirement benefits that would fall outside the scope of the CSRA's system of review. *See, e.g.*, *McNary*, 498 U.S. at 491-97. But here, given the substantive relief requested by the Association and its failure to identify any reason the claimants it represents would be unable to attain meaningful judicial review within the CSRA review framework, we deem district court review of this third claim also foreclosed. *See Elgin*, 567 U.S. at 16-23; *Heckler*, 466 U.S. at 614-15.

23

## B.

Without grappling with our more recent CSRA precedent, the Association relies on our decision in *NTEU v. Devine*, 733 F.2d 114 (D.C. Cir. 1984), to argue that pre-enforcement, systemic challenges to rules fall outside the CSRA's review framework. *Devine* involved a challenge to OPM policies governing federal personnel reduction-in-force procedures, performance management systems, and pay administration. *Id.* at 115-16. The district court held that OPM's regulations were null and void due to a congressional resolution restricting OPM's authority to effectuate new personnel regulations. *Id.* at 116. We affirmed the district court's ruling. *Id.* at 117, 120-21. As relevant here, in a footnote we rejected OPM's argument that the action could not be brought under the APA "because provisions in the [CSRA] established the exclusive means to review the decisions at issue." *See id.* at 117 n.8. As we explained:

> It is one thing to say that when a statute provides a detailed scheme of administrative protection for defined employment rights, less significant employment rights of the same sort are implicitly excluded and cannot form the basis for relief directly through the courts. It is quite different to suggest, as appellant does, that a detailed scheme of administrative adjudication impliedly precludes pre[-]enforcement judicial review of rules.

*Id.* (citation omitted). The Association contends that those two sentences established an exception to CSRA preclusion of district court review for APA claims seeking "pre[-]enforcement judicial review of rules," *id.*, that applies to the Association's claims.

We are unpersuaded by the Association's reliance on *Devine*. As an initial matter, OPM questions the continued

24

vitality of *Devine* in light of *Thunder Basin* and *Elgin*. Gov't Br. 29-30 (citing *Thunder Basin*, 510 U.S. at 202; *Elgin*, 567 U.S. at 12, 15). In *Thunder Basin*, the Supreme Court clarified that Congress's intent that an alternative statutory system preclude district court review need only be "fairly discernible" from the statute. 510 U.S. at 207 (quoting *Block*, 467 U.S. at 351). Applying that standard, it held that the comprehensive statutory regime for reviewing agency enforcement actions set forth in the Federal Mine Safety and Health Amendments Act precluded district court review of a pre-enforcement challenge, even though the Act was "facially silent with respect to pre-enforcement claims." *Id.* at 208; *see id.* at 207-16. In *Elgin*, the Court followed *Thunder Basin* to conclude that the CSRA's text, structure, and purpose likewise "support[ed] implied preclusion of district court jurisdiction [over challenges to adverse personnel actions covered by the CSRA], at least as a general matter," and rejected the petitioners' request to "carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 12; *see id.* at 9-14. Those decisions call into question *Devine*'s assumption that "a detailed scheme of administrative adjudication," like the CSRA's, cannot "impliedly preclude[] pre[-]enforcement judicial review of rules." 733 F.2d at 117 n.8; *see also Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *6 (4th Cir. Apr. 19, 2022) (unpublished opinion); *Payne v. Biden*, 602 F. Supp. 3d 147, 159 (D.D.C. 2022). But, in any event, the Court need not and does not resolve whether footnote eight of *Devine* remains good law, because *Devine* is distinguishable from this case.

*Devine* involved a wholly pre-enforcement rulemaking challenge; the Association's action does not. In *Devine*, the plaintiff challenged OPM's new regulations before they came into effect. 733 F.2d at 116. By contrast, the Association filed suit nearly three years after OPM issued its 2016 Guidance. In

25

fact, the Association's own complaint alleges that OPM began implementing the 2016 Guidance long before the Association filed its suit in March 2019. It states that "[i]n or around July 2016, OPM began apportioning Annuity Supplements to former spouses whenever a divorce court ordered division of the FERS Basic Annuity benefit even where that order did not expressly divide the Annuity Supplement," and that "[a]lso, in or around July 2016," OPM "began deducting" any past overpayments "in monthly installments from affected retirees' annuity payments." J.A. 13 (Complaint). Additionally, the complaint requests that the court "[d]eclare invalid OPM's practice of apportioning the FERS Annuity Supplement absent a court order expressly directing such apportionment" and "[p]ermanently enjoin [OPM] from *continuing* to do so." *Id.* at 16 (emphasis added). The complaint thus, by its own terms, challenges the ongoing enforcement of OPM's 2016 Guidance.

The Association does not dispute this point. *See* Reply Br. 7. Instead, it argues that "there are at least two categories of individuals affected by the OPM rule for whom this challenge is fully 'pre-enforcement' to the same extent as the rulemaking challenge[] found permissible in *Devine*." *Id.* (citing *Devine*, 733 F.2d at 115). According to the Association, those two categories are: "divorced active employees whose Supplements will be apportioned to former spouses upon their retirement even though their divorce decrees do not expressly order this division," and "retirees who ceased receiving a Supplement before 2016 but whose Basic Annuities were apportioned to former spouses," as to whom OPM "has not yet attempted to retroactively apportion the[ir] Supplements." *Id.* at 7-8. Put simply, the Association argues that it brings a pre-enforcement challenge because there are future and current retirees as to whom OPM has not yet applied its 2016 Guidance. *See id.*

26

That argument misses the mark. For starters, the Association's understanding of the term "pre-enforcement" is overbroad. By the Association's logic, every challenge to an agency rule would qualify as a "pre-enforcement" challenge to the extent that there are subject entities or individuals as to whom the rule has yet to be applied. In any event, given *Devine*'s uncertain vitality, we decline to extend any exception it established for wholly pre-enforcement rulemaking challenges—*i.e.*, challenges to rules that have not yet been applied to anyone—to an action that, on its face, alleges that enforcement of the challenged rule is already ongoing. *See* J.A. 16 (Complaint). Thus, assuming without deciding that *Devine* remains good law, it cannot salvage the Association's claims.

\* \* \*

For the foregoing reasons, we hold that the CSRA's system of review—which channels disputes about FERS retirement benefits through an administrative process, subject to direct review in the Federal Circuit—precludes district court review of the Association's claims. We therefore vacate the orders of the district court and remand with instructions to dismiss for lack of jurisdiction.

*So ordered.*