

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, DC 20530

Tel: (202) 305-8849

March 21, 2023

**Via CM/ECF**

Lyle W. Cayce, Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
600 South Maestri Place
New Orleans, LA 70130

      RE:   *Feds for Medical Freedom v. Biden*, No. 22-40043 (en banc) (argued Sept. 13, 2022)

Dear Mr. Cayce:

I write under Rule 28(j) to call the Court's attention to the D.C. Circuit's decision today in *Payne v. Biden*, No. 22-5154, on precisely the jurisdictional issue presented here: whether the Civil Service Reform Act (CSRA) precludes district-court jurisdiction over a challenge to the COVID-19 vaccination requirement for federal employees. In a unanimous opinion, applying the Supreme Court's precedents in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012), the D.C. Circuit held that the CSRA required the dismissal of the suit. Those precedents require the same result here.

                                                     Sincerely,

                                                     */s/ Charles W. Scarborough*
                                                     Charles W. Scarborough

cc:     All counsel (via CM/ECF)

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 2, 2022      Decided March 21, 2023

No. 22-5154

JASON PAYNE,
APPELLANT

v.

JOSEPH R. BIDEN, JR., PRESIDENT, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-03077)

---

*Gene P. Hamilton* argued the cause for appellant. On the brief was *Reed D. Rubinstein*. *Andrew Block* entered an appearance.

*Daniel Winik*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Charles W. Scarborough* and *Casen Ross*, Attorneys.

Before: WILKINS and WALKER, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: In 1978, Congress enacted the Civil Service Reform Act ("CSRA") to provide a subset of federal employees with access to administrative and judicial review to contest certain adverse employment actions. The Supreme Court has confirmed, as recently as 2012, that Congress intended this statutory scheme to preclude district court jurisdiction over certain claims. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). In practice, such preclusion does not obstruct an employee's access to judicial review, but instead redirects the avenue through which the employee may proceed.

In September 2021, President Biden issued Executive Order No. 14,043, mandating that all executive branch employees obtain the COVID-19 vaccination, subject to medical or religious exception. Exec. Order No. 14,043, 86 Fed. Reg. 50,989 (Sept. 9, 2021). This Order also directs the Safer Federal Workforce Task Force to provide guidance as to how the vaccine mandate should be implemented. *Id.* at 50,989–90; *see* Exec. Order No. 13,991, 86 Fed. Reg. 7045, 7046 (Jan. 20, 2021) (establishing the Safer Federal Workforce Task Force). In doing so, the Task Force outlined certain disciplinary measures to which noncompliant federal employees may be subject. Petitioner Jason Payne is a civilian employee of the Department of the Navy who contests the vaccine mandate and has declined to comply.

On November 22, 2021—the day federal employees were required to be vaccinated—Mr. Payne filed suit in District Court, challenging the mandate's constitutionality. Characterizing Mr. Payne's suit as a "workplace dispute involving a covered federal employee," the District Court found Mr. Payne's claims were precluded under the CSRA and

3

dismissed the suit for lack of subject matter jurisdiction. *Payne v. Biden*, 602 F. Supp. 3d 147, 151 (D.D.C. 2022). On appeal, Mr. Payne insists that he challenges the vaccine mandate's constitutionality, as opposed to contesting a workplace dispute under the CSRA. According to his complaint, however, he alleges that the vaccine mandate is unconstitutional—at least in part—*because* it requires that he obtain the vaccine to avoid adverse employment action. For the reasons discussed below, Mr. Payne's claims contesting such adverse employment action necessarily fall under the CSRA's statutory scheme. Accordingly, we affirm the District Court.

**I.**

The sole issue before us is whether the District Court correctly found it lacked subject matter jurisdiction to adjudicate Mr. Payne's claims. This jurisdictional determination rises and falls with the CSRA's construction.

**A.**

The CSRA is an "'integrated scheme of administrative and judicial review' for aggrieved federal employees [] designed to replace an 'outdated patchwork of statutes and rules' that afforded employees the right to challenge employing agency actions in district courts across the country." *Elgin*, 567 U.S. at 13–14 (quoting *United States v. Fausto*, 484 U.S. 439, 444–45 (1988)). The previous system gave rise to inconsistent decisions concerning similar issues and "a double layer of judicial review" that the Supreme Court has repeatedly described as "wasteful and irrational." *Elgin*, 567 U.S. at 14 (citing *Fausto*, 484 U.S. at 445). In response, the CSRA "prescribe[d] in great detail the protections and remedies" available to federal employees challenging adverse personnel

4

actions and also outlined "the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443.

The CSRA has three primary sections regulating adverse personnel action, two of which are relevant here: Chapter 23 and Chapter 75. *See* 5 U.S.C. §§ 4301 *et seq*; *Fausto*, 803 U.S. at 445–47.

Chapter 23 outlines the "merit system principles" agencies must uphold. 5 U.S.C. § 2301(b). Violations of these principles constitute "prohibited personnel practices," and Chapter 23 establishes the process through which employees may contest such practices. *Id.* § 2302(a). Under this process, an employee alleging a personnel practice violation has the option of first filing charges with the Office of Special Counsel ("OSC"), and if the employee has "reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken which requires corrective action," Chapter 12, governing the investigation of prohibited personnel practices, provides that the OSC "shall report the determination together with any findings or recommendations" to the Merits Systems Protection Board ("MSPB"). *Id.* § 1214(b)(2)(B). Should the violation continue, the OSC "may petition the Board," *id.* § 1214(b)(2)(C), and the MSPB may at that point issue corrective action. The OSC may also "bring petitions for stays, and petitions for corrective action[.]" *Id.* § 1212(a)(2)(A). Importantly, the CSRA grants the United States Court of Appeals for the Federal Circuit jurisdiction to review the MSPB's final orders. *See id.* §§ 1214(c), 7703(b)(1)(A).

Chapter 75 addresses major adverse actions against employees. The first subchapter governs suspensions of fourteen days or less, *see id.* §§ 7501–04, and the second subchapter governs more serious actions—involving removal,

5

suspensions over fourteen days, grade reduction, pay reduction, and furlough up to thirty days, *see id.* §§ 7511–15. Subchapter II provides that a covered employee "against whom an action is proposed is [generally] entitled to[:]" a minimum of "30 days' advance written notice[;]" the opportunity to respond orally and in writing; representation; and "a written decision and the specific reasons therefor at the earliest practicable date." *Id.* § 7513(b). Decisions under Subchapter II are appealable, first to the MSPB, *id.* § 7513(d), and then to the Federal Circuit, *id.* § 7703(b). And if successful, relief under either chapter may include reinstatement, back pay, and attorneys' fees. *See id.* §§ 1204(a)(2), (m), 5596(b); *see also Elgin*, 567 U.S. at 6.

Thus, while both chapters require a covered employee to first challenge certain action before an administrative body, as opposed to a district court, both chapters also prescribe that it is the Federal Circuit, not this Court, that must handle any potential judicial review. With this understanding, we turn to the facts and consider whether the claims at issue could be adjudicated under either chapter.

**B.**

In September 2021, President Biden issued Executive Order No. 14,043 as part of the Executive's response to COVID-19. Exec. Order No. 14,043, 86 Fed. Reg. 50,989 (Sept. 9, 2021). The Order requires that all federal employees be vaccinated subject to "exceptions only as required by law." *Id.* at 50,990. President Biden also created a Safer Federal Workforce Task Force to help guide the implementation process. According to the Task Force, employees should have received a "final vaccination dose by November 8, 2021," so they would be "fully vaccinated by November 22, 2021," and enforcement against noncompliant employees could begin on

6

November 9, 2021. J.A. 49–51. "Progressive enforcement actions" may include "[a] 5-day period of counseling and education;" a short suspension of up to 14 days without pay; and removal "for failing to follow a direct order." J.A. 63–64. As for legally required exemptions—provided "on the basis of a medical condition or circumstance or a sincerely held religious belief, practice or observance"—the Task Force advises agencies to abstain from implementing disciplinary measures against employees with pending exemption requests. J.A. 64. And in the case of denial, the employee should be provided two weeks to obtain vaccination if they so choose.

At the motion to dismiss stage, we must treat the following well-pleaded allegations in the complaint as true. *See Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017). Mr. Payne is a civilian employee with the Department of the Navy, serving as an engineer for the Office of Naval Research. He claims to have gained "natural immunity" against COVID-19 after having contracted and recovered from the disease. Compl. ¶ 7. Accordingly, Mr. Payne informed his supervisors of his decision to decline vaccination.

On November 22, 2021, the day that all non-exempt federal employees were required to be fully vaccinated, Mr. Payne sued President Biden and several other federal officials and agencies. Seeking both declaratory and injunctive relief, Mr. Payne claims the vaccine mandate violates the separation of powers and his Fifth Amendment right to privacy, and places an unconstitutional condition on his employment.

The government contested Mr. Payne's suit on jurisdictional grounds, arguing that Congress divested district courts of subject matter jurisdiction over claims challenging an Executive Order, such as these, when it enacted the CSRA. The District Court agreed and granted the government's

Case: 22-40043   Document: 300   Page: 8   Date Filed: 03/21/2023
USCA Case #22-5154   Document #1991013   Filed: 03/21/2023   Page 7 of 16

7

Motion to Dismiss. In its view, the claims could be characterized as a challenge to either "working conditions" under Chapter 23 of the CSRA, or a termination decision under Chapter 75 of the CSRA. *Payne*, 602 F. Supp. 3d at 157–59.

Because Mr. Payne could obtain administrative and judicial review under either chapter, the District Court held that the CSRA applies and dismissed the case for lack of jurisdiction. This timely appeal followed.

**II.**

We review *de novo* a district court's dismissal of a suit for lack of subject matter jurisdiction. *See RICU LLC v. HHS*, 22 F.4th 1031, 1034 (D.C. Cir. 2022). In doing so, we construe the complaint in the plaintiff's favor and grant him the benefit of all reasonable inferences. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Applying these principles here, we come to the same conclusion as the District Court.

As a general matter, the power of the federal courts stems from constitutional and statutory authorization. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Congress, thus, may determine certain jurisdictional bounds. *See Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). And when Congress establishes a specific statutory review scheme, "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (citing *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979)). To ensure that this is the case, however, reviewing courts employ a two-part inquiry put forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). First, we determine whether Congress's intent to replace district court jurisdiction with an

8

alternative process of review is "fairly discernible in the statutory scheme." *Id.* at 207. Second, we analyze whether the "claims are of the type Congress intended to be reviewed within this statutory structure." *Id.* at 212.

### A.

Proceeding to step one under *Thunder Basin*, we begin by identifying Congress's intent. "To determine whether it is fairly discernible that Congress precluded district court jurisdiction over [Mr. Payne's] claims, we examine the CSRA's text, structure, and purpose." *Elgin*, 567 U.S. at 10 (internal quotation marks omitted). The Supreme Court acknowledges that it has examined the congressional intent behind the CSRA multiple times. *See Elgin*, 567 U.S. at 10. And as the Fourth Circuit recently noted when deciding a similar case, such Supreme Court precedent resolves this first step. *See Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *4 (4th Cir. Apr. 19, 2022) ("Thus, *Elgin* resolves step one. It's 'fairly discernible' that Congress intended the CSRA to foreclose judicial review in at least some circumstances.") (quoting *Elgin*, 567 U.S. at 23).

In *Elgin*, the Supreme Court considered whether the CSRA precluded district court jurisdiction such that petitioners—federal employees who were discharged for failing to register for the Selective Service as required by statute—had to challenge the statute pursuant to the CSRA. Under this first step, the *Elgin* Court found that the CSRA's "elaborate framework" clearly "demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review." 567 U.S. at 11 (internal quotation marks and emphasis omitted). Thus, *Elgin* instructs that given "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of

9

adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11–12. To further clarify, the *Elgin* Court explained that the "only one situation" in which an otherwise covered employee could proceed before the district court, and thus outside the statutory scheme, occurs when the employee alleges discrimination through a violation of an enumerated federal employment law. *Id.* at 13.

Accordingly, the *Elgin* Court rejected the petitioners' attempt to carve out an exception based on the type of constitutional challenge raised, and ultimately held that "the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional." *Id.* at 5. In reviewing the same statutory scheme here, we apply *Elgin* and find it "fairly discernible" that Congress intended to preclude judicial review over claims falling within the CSRA's purview.

**B.**

Continuing to the second step of the *Thunder Basin* framework, we consider whether Mr. Payne's constitutional challenge is the type of claim Congress planned to be assessed under the CSRA. A claim generally falls outside of the special statutory scheme only when: "(1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim is wholly collateral to the statutory review provisions; and (3) the claim[] [is] beyond the expertise of the agency." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018); *see AFGE, AFL-CIO v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019) (same). These three points function as "general guideposts," as opposed to a strict formula, and each one helps shape our analysis. *Jarkesy*, 803 F.3d at 17. As applied here, all three

10

factors direct us to find the CSRA precludes Mr. Payne's claims.

**1.**

Under the first factor, we consider whether Mr. Payne has access to meaningful judicial review. It is important to note that the availability of meaningful judicial review is not so strictly defined as to require that every legal question related to a litigant's claim be decided in the first instance. Rather, a statutory scheme, precluding district court jurisdiction in favor of an administrative body that cannot adjudicate constitutional questions pertaining to federal law, may still satisfy this factor when such determinations are reviewable before a court of appeals. *See Elgin*, 567 U.S. at 17.

Mr. Payne's primary argument is that the CSRA deprives him of meaningful judicial review because it does not allow him to challenge the vaccine mandate through a pre-enforcement claim. In practice, Mr. Payne contends that this means he must continue declining vaccination until adverse employment action is enforced against him. He argues that such a requirement would unfairly obligate him to "bet the farm" and "violate a rule before challenging the rule's validity." Appellant Br. at 32 (citing *Free Enter. Fund. v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490–91 (2010)); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 134 (2007) (finding that a plaintiff need not "bet the farm" by destroying a building and risking 80 percent of business prior to seeking a legal declaration of its rights). Mr. Payne takes issue with the District Court's characterization of his claims as contesting a proposed adverse personnel action because, as he explains on appeal, he is challenging an unconstitutional vaccine mandate. *See* Appellant Br. at 33. But such re-framing is inconsistent

11

with his overarching argument and does not alter the jurisdictional outcome.

At the same time that Mr. Payne hinges his standing to challenge the vaccine mandate on the promised termination that will follow his continued noncompliance, he also maintains that the CSRA cannot offer him meaningful review because he is not challenging any proposed personnel action. Again, the jurisdictional question before the Court is whether Mr. Payne may challenge the vaccine mandate under the CSRA in district court. Whether Mr. Payne characterizes his claims as challenging the immediate injury he faces under the vaccine mandate, or the vaccine mandate's existence in general, we find that either Chapter 23 or Chapter 75 provides him with a path forward. Because Mr. Payne's argument on appeal is more focused on the threat of termination, we begin with Chapter 75.

As previously explained, Chapter 75 entitles "an employee against whom an action [including removal] is proposed" to notice, reasonable time to answer and present supporting evidence, representation, and a reasoned written decision. 5 U.S.C. § 7513(b); *see id.* §§ 7511 (defining which employees are covered under the subchapter), 7512 (outlining the actions covered under the subchapter). If action is taken, the employee "is entitled to appeal" to the MSPB where the employee is entitled to a hearing and legal representation. *Id.* § 7513(d); *see id.* § 7701(a). And once the MSPB issues its decision, the employee may appeal this final order to the Federal Circuit. *Id.* § 7703(b)(1)(A).

The CSRA therefore covers pre-enforcement removal challenges like Mr. Payne's because while he has not yet been terminated, Chapter 75 provides meaningful review for employees "against whom an action is *proposed*."

12

*Id.* § 7513(b) (emphasis added). And although the CSRA does not define "proposed," we agree with the Fourth Circuit that the nature of these claims makes such a definition unnecessary to deciding this jurisdictional issue. *See Rydie*, 2022 WL 1153249, at *7. Mr. Payne argues that the government "threaten[s]" disciplinary action, and under the alleged facts, the government could not have threatened the action without having proposed it. Appellant Br. at 30 n.3. The Complaint reinforces such a finding because Mr. Payne alleges that "[D]efendants have promised [Mr. Payne] will lose his job," the defendants are implementing the vaccine mandate, and given that the vaccine mandate has been "declared a condition of federal employment, Mr. Payne . . . will be disciplined, suspended without pay, and removed from Federal service for failing to follow a direct order." Compl. ¶¶ 2, 58 (cleaned up).

The second way Mr. Payne may obtain judicial review is by challenging a "prohibited personnel practice" under Chapter 23. 5 U.S.C. § 2302. An example of "personnel action," as defined by statute, includes the "significant change in duties, responsibilities, or working conditions[.]" *Id.* § 2302(a)(2)(A)(xii). Chapter 23 prohibits supervisory employees from participating in any act constituting a "prohibited personnel practice." *Id.* § 2302(a), (b). One of the enumerated prohibited practices includes "tak[ing] or fail[ing] to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301[.]" *Id.* § 2302(b)(12). And one such merit system principle involves the failure to accord "proper regard for [the covered employee's] privacy and constitutional rights." *Id.* § 2301(b)(2).

While Mr. Payne does not dispute that he is a covered employee, he maintains that his claims do not qualify as

13

prohibited personnel practices because he challenges the mandate as opposed to challenging the masking or testing requirements. Furthermore, Mr. Payne's counsel also represented at oral argument that the mask requirement has since been withdrawn. Oral Arg. Tr. 8:23–25. But even without the mask requirement—or any of the other COVID-19 related requirements initially alleged and relied upon by the District Court—Mr. Payne still has the option of filing a complaint before the OSC, arguing that the vaccine mandate, and the disciplinary action he faces for his continued noncompliance, constitute personnel practices taken without "proper regard for [his] . . . constitutional rights." *Id.* § 2301(b)(2); *see id.* § 2302(b)(12).

Thus, Mr. Payne may access meaningful review by following the procedures described under either Chapter 75, covering proposed removal, or Chapter 23, covering prohibited personnel practices. In so finding, we note that to the extent that Mr. Payne finds support in our pre-1994 precedent identifying certain exceptions to a statutory scheme's preclusive effect, *see* Appellant Br. 23 (citing *Nat'l Fed'n of Fed. Emps. v. Weinberger*, 818 F.2d 935, 938–40 (D.C. Cir. 1987); *Harmon v. Thornburgh*, 878 F.2d 484, 485–87 (D.C. Cir. 1989); *Spagnola v. Mathis*, 859 F.2d 223, 229–30 (D.C. Cir. 1988) (en banc) (per curiam)), such exceptions cannot survive the Supreme Court's subsequent decisions in *Thunder Basin* and *Elgin*—clarifying that a statutory scheme may exclusively preclude jurisdiction when Congress's intent to do so is "fairly discernible." *Thunder Basin*, 510 U.S. at 207; *Elgin*, 567 U.S. at 12; *see also See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 758 (D.C. Cir. 2019) ("We once suggested in a footnote [citing *Weinberger*, 818 F.2d at 940 n.7] that the Statute would not allow us to review constitutional claims that the FLRA could not consider," but

14

such a "suggestion cannot survive the Supreme Court's decision in *Thunder Basin*").

**2.**

We next consider whether the claims are "wholly collateral to a statute's review provisions." *Thunder Basin*, 510 U.S. at 212 (internal quotation marks and citation omitted). Claims are not wholly collateral if they serve as the "vehicle by which [the plaintiff] seek[s] to reverse" the adverse employment action. *Jarkesy*, 803 F.3d at 23 (citing *Elgin*, 567 U.S. at 22). As we have emphasized, "an exception to an otherwise exclusive scheme for constitutional challenges in general, or facial attacks on a statute in particular, or some other as-yet-undefined category of constitutional claims, would encourage respondents in administrative enforcement proceedings to frame their challenges to the [agency's] actions in those terms and thereby earn access to another forum" for review. *Jarkesy*, 803 F.3d at 25. Such gamesmanship would be inconsistent with Congress's intent to set the boundaries of an exclusive avenue for review.

By arguing that his claims are wholly collateral, Mr. Payne seeks an exception to the CSRA's exclusivity. Indeed, he attempts to circumvent the CSRA's procedure and proceed in district court because his challenge pertains to the Constitution rather than CSRA-covered personnel action. But while Mr. Payne certainly alleges that the vaccine mandate is unconstitutional, he does so—at least in part—because of the mandate's "promis[e] to deprive [him] of public employment unless" he complies. Compl. ¶ 86. Adopting Mr. Payne's theory would thus enable scores of litigants challenging an employment requirement to skip over the CSRA's process by characterizing the requirement as unconstitutional. "Such suits would reintroduce the very potential for inconsistent

15

decisionmaking and duplicative judicial review that the CSRA was designed to avoid." *Elgin*, 567 U.S. at 14.

All attempts to characterize his argument as anything but a challenge to adverse employment action fail for jurisdictional purposes, because Mr. Payne himself admits that his standing to challenge the vaccine mandate is rooted in the looming disciplinary action he now faces as a result of his continued noncompliance. In other words, Mr. Payne challenges the vaccine mandate to maintain his employment while continuing to defy the mandate that he views as unlawful. And while his constitutional arguments are relevant to the merits, they do not change the fact that one of Mr. Payne's interests in this suit is to avoid the impending adverse employment action. Mr. Payne's claims are not wholly collateral because challenges to adverse employment actions are the type of claims that the MSPB regularly adjudicates.

**3.**

Like the first two factors, the third factor—agency expertise—is interpreted broadly. Courts may find this factor satisfied by considering "the many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise." *Elgin*, 567 U.S. at 22. Mr. Payne argues that his claims fall outside the agency's expertise because, again, he frames his claims as constitutional challenges unrelated to the CSRA's procedures. We reject this argument because the MSPB's expertise remains applicable to the various threshold questions attached to the claims and any preliminary issues particular to the employment context. *See id.* at 22–23 (noting preliminary issues such as those involving a statute that MSPB often interprets; "statutory or constitutional claims that the MSPB routinely considers[;]" or "a constitutional challenge to a federal statute"). Also, it

16

remains possible that the MSPB finds the promised disciplinary action violates the statutory requirement that major adverse employment action "promote the efficiency of the service." 5 U.S.C. §§ 7503(a), 7513(a). If so, the MSPB could issue a ruling in Mr. Payne's favor, possibly rendering his constitutional claims moot.

Based on the foregoing, all three factors weigh in the government's favor and Mr. Payne's claims fall within the CSRA's framework. We thus conclude that Congress precluded the District Court from reviewing Mr. Payne's claims.

### III.

There is but one permissible conclusion given our well-established precedent guiding jurisdictional preclusion issues of this nature. By reframing the issue as "whether the CSRA *removes* district court jurisdiction" as opposed to "whether it *permits* it," Mr. Payne attempts to introduce nuance where none exists. Appellant Reply Br. at 4 (emphases in original). The law is clear that where the CSRA provides judicial review, it does so exclusively. Thus, in finding that Mr. Payne *may* proceed through the CSRA's scheme, we necessarily find that should Mr. Payne choose to continue challenging the vaccine mandate, he *must* do so through the CSRA's scheme. Such is the nature of an "exclusive avenue to judicial review." *Elgin*, 567 U.S. at 5.

\* \* \*

For the foregoing reasons, we affirm the District Court's judgment.

*So ordered.*